UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Gesture Technology Partners, LLC, *Plaintiff*, v. Motorola Mobility LLC, *Defendant*. | No. 22 CV 3535 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Gesture Technology Partners, LLC, ("GTP") has sued Motorola Mobility LLC, ("Motorola") alleging patent infringement. Before the Court is Motorola's motion for summary judgment. Because no reasonable jury could conclude Motorola is infringing the patent, the motion is granted.

I. Background

The following facts are taken from the parties' Local Rule 56.1 statements and supporting exhibits. The Court presents the facts in the light most favorable to GTP, the non-moving party. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023).

GTP owns Patent No. 8,878,949, ("'949 Patent") titled "Camera Based Interaction and Instruction." [Dkt. 139-1 at 1.][1] GTP's founder, Dr. Timothy Pryor, is the named inventor. [*Id.*] The patented technology in the '949 Patent allows a user to control an electronic device through gestures. For example, the camera in a cell phone capturing an image in response to detecting a wave, smile, or some other movement.

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

[*Id.* at 11 ("the invention … provide[s] a method for taking pictures when certain poses of objects, sequences of poses, motions of objects, or any other states or relationships of objects are represented.").]

GTP contends Motorola infringes the '949 Patent in 35 of its products (the "Accused Devices") through technology embedded in three of Motorola's own functionalities, as well as functionalities from three third-party applications installed on the Accused Devices (collectively, the "Accused Functionalities"). [Dkt. 139-3 at 10-12, 61-70.]

Motorola disagrees and has moved for summary judgment, raising two theories for dismissal. [Dkt. 137.] First, the Accused Functionalities do not infringe the '949 Patent, but even if they did, the '949 Patent is invalid.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). This is equally true in patent cases. *Sunoco Partners Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 2017 WL 4283946, at *7 (N.D. Ill. Sept. 27, 2017) ("Patent cases can be resolved

at summary judgment just as other litigation can") (citing *Tokai Corp. v. Easton Enterps., Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011)).

**III. Analysis**

Motorola argues there is no genuine dispute that it is not infringing the '949 Patent. [Dkt. 138 at 18-22.]

The Court's infringement analysis is a two-step process: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Duncan Parking Techs., Inc. v. IPS Group, Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019). Step one is a legal question, whereas step two is "primarily factual", though for infringement to exist, "the accused device must satisfy every limitation in the asserted claims." *LoggerHead Tools, LLC v. Sears Holding Corp.*, 328 F. Supp. 3d 885, 902 (N.D. Ill. 2018). Ultimately, "[t]o support a summary judgment of noninfringement it must be shown that, on the correct claim construction, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Kove IO, Inc. v. Amazon Web Services, Inc.*, 2024 WL 450028, at *11 (N.D. Ill. Feb. 6, 2024); *see also Chicago Mercantile Exchange, Inc. v. Technology Research Group, LLC,* 789 F.Supp.2d 986, 991 (N.D. Ill. 2011) (summary judgment for non-infringement proper when "no reasonable jury could find that the accused system meets every limitation recited in the properly construed claims.")

There is only a single claim at issue in the '949 Patent, claim 4, which is dependent on claim 1. Accordingly, GTP must show that there is a genuine question

3

of material fact that the Accused Devices "meet[] every limitation recited" in these claims. 35 U.S.C. § 112(d) ("a claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers"); *Chicago Mercantile Exchange, Inc.*, 789 F.Supp.2d 986, at 991; *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1142 (Fed. Cir. 2018) ("the patentee must show that the accused device meets each claim limitation…") The text of claims 1 and 4 are reproduced below:

> Claim 1
>
> A portable device comprising:
>
> a device housing including a forward facing portion, the forward facing portion of the device housing encompassing an electro-optical sensor having a field of view and including a digital camera separate from the electro-optical sensor; and
>
> a processing unit within the device housing and operatively coupled to an output of the electro-optical sensor, wherein the processing unit is adapted to: determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output, and
>
> control the digital camera in response to the gesture performed in the electro-optical sensor field of view, wherein the gesture corresponds to an image capture command, and wherein the image capture command causes the digital camera to store an image to memory.
>
> Claim 4
>
> The portable device of claim 1 wherein the electro-optical sensor is fixed in relation to the digital camera.

[Dkt. 139-1 at 18.]

The first paragraph in claim 1 requires (i) a portable device with; (ii) a device housing that contains both; (iii) an electro-optical sensor with a field of view; and (iv)

4

a digital camera that is separate from the electro-optical sensor.[2] The parties agree that the Accused Devices contain a device housing with an electro-optical sensor. More specifically, the parties agree that each Accused Device has a substantially identical camera module, the RacerTurbo 108MP (the "Module"), and that the Module contains a metallic housing, lens, ribbon cable, and a CMOS electro-optical sensing array with a field of view (the "Sensor").[3] [Dkt. 148 at 13; *see also* Dkt. 138 at 19.] In addition, the parties agree that the Sensor performs the gesture-detecting function in the Accused Functionalities and that the Module captures digital images.[4] [Dkt. 138 at 20.]

Where the parties disagree, and the basis for Motorola's argument that it is not infringing the '949 Patent, is limitation (iv): that the electro-optical sensor in the Accused Devices is not "separate from" the "digital camera." [Dkt. 138 at 7 ("Motorola does not infringe claim 4 … because none of the accused functionalities in the accused devices use an electro-optical sensor that is 'separate from' the digital camera.").] Motorola contends the Sensor cannot be separate from the camera because the Sensor performs the dual functions of detecting gestures and serving as the sensor required for the digital camera to function. [*Id.* at 18-19.] GTP's response is that each Accused

---

[2]  Claim 1's second paragraph requires the device housing to have a "processing unit" that is "coupled to an output of the electro-optical sensor" where the processing unit can "determine a gesture has been performed in the electro-optical sensor field of view based on the electro-optical sensor output." [Dkt. 139-1 at 18.] For ease of reference, the Court will refer to the sensor's ability to detect gestures, even though this is an oversimplification.

[3]  Because each Accused Device has the same parts, the Court need not engage in individualized analysis; what applies to one applies to all.

[4]  Dr. Myler, GTP's expert, identified two other sensors in the Accused Devices—ambient light and proximity sensors—but admitted at his deposition that those sensors are not capable of detecting gestures. [Dkt. 139-6 at 38, 41.]

Device contains a camera module with both an electro-optical sensor and digital camera, rendering them separate. [Dkt. 148 at 6.] Resolution of this issue requires the Court to construe the terms "digital camera" and "separate from" as they appear in claim 1.

Digital camera is neither given a special definition in the '949 Patent, nor did the parties request a specific construction of this term at the *Markman* hearing. [*See* Dkt. 100.] Accordingly, the Court will apply the term's "ordinary and customary meaning." *Aventis Pharms., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1375 (Fed. Cir. 2013); *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, 2018 WL 2412375, at *2 (N.D. Ill. May 29, 2018) (a term in a patent claim "takes on its ordinary meaning unless the patentee demonstrates an intent to deviate from that meaning…").

A camera is "a device that consists of a lightproof chamber with an aperture fitted with a lens and a shutter through which the image of an object is projected onto a surface for recording (as on a photosensitive film or an electronic sensor)." *Camera*, Merriam-Webster, https://www.merriam-webster.com/dictionary/camera (last visited September 23, 2024). A digital camera is a subset of cameras "that records images as digital data instead of on film." *Digital Camera*, Merriam-Webster, https://www.merriam-webster.com/dictionary/digital%20camera (last visited September 23, 2024); *see also* [Dkt. 139-1 at 11 ("High Resolution Digital still cameras employing matrix photodetector array chips to scan the image produced by the camera lens.").]

Based on these definitions, the Court concludes a digital camera must be capable of capturing images and recording them digitally. A device that cannot do both is not a digital camera. In addition, the Court construes the term "separate from"[5] to mean "distinct" or "disconnected."

Applying these constructions to claim 1, the electro-optical sensor that detects gestures cannot be the same sensor used to facilitate the capture of images in the digital camera; otherwise "separate from" in claim 1 would be superfluous. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.") Therefore, for GTP to overcome Motorola's non-infringement argument, it must put forth sufficient evidence for a reasonable jury to conclude the Module of the Accused Devices contains the components of a digital camera, and another, separate sensor that is capable of detecting gestures.

As discussed above, there is no dispute that the Sensor (i) is the only sensor within the Module; (ii) the only sensor within the Accused Device itself capable of detecting gestures; and (iii) is the sensor used in conjunction with the other Module components to capture images (i.e., the digital camera). Accordingly, Motorola contends it is not infringing the '949 Patent because there is no electro-optical sensor that is "separate from" the digital camera; there is only one Sensor and it is an integral part of the digital camera. [Dkt. 138 at 19.]

---

[5] The term "separate from" only appears once in the '949 Patent, so its ordinary meaning likewise applies. *Aventis Pharms., Inc.*, 715 F.3d 1363, at 1375.

The Court agrees. The undisputed facts demonstrate that the Sensor both detects gestures and functions as part of the digital camera. Put differently, the processing unit would not be able to detect gestures without the Sensor, and without the Sensor, the digital camera could not capture or record images. *See e.g., Fullview, Inc. v. Polycom, Inc.*, 635 F.Supp.3d 917, 924 (N.D. Cal. 2022) ("a 'camera' comprises of a single image sensor and lens that forms an image on the sensor"); [Dkt. 139-6 at 40-42 (Dr. Myler discussing the Sensor's role within the digital camera, and admitting all Accused Devices have a sensor)]; *see also* LENOVO[6], (listing "essential parts of a camera" as "the body, the lens, the shutter, the aperture, and the image sensor"); *see also id.* ("Digital cameras capture images electronically using a sensor"); PHOTONICS MARKETPLACE[7], ("digital cameras use electronic sensors to convert light into digital data that can be stored, displayed, and manipulated electronically.") If the digital camera within the Module needs the Sensor to capture images—and GTP does not claim the contrary—the two are not "separate from" one another. Accordingly, the Accused Devices do not infringe the '949 Patent.

GTP raises several arguments in response, but none are persuasive. First, it contends that the Sensor is separate from the digital camera because its "fields of view … are separate and distinct from the lens, which defines the field of view of the digital camera." [Dkt. 148 at 14.] But as shown above, a lens is a component of a

---

[6] https://www.lenovo.com/us/en/glossary/camera-components/?orgRef=https%253A%252F%252Fwww.google.com%252F&srsltid=AfmBOoofEZ1q7LJ7z3Suibwn9EpG5OdCztsxWBzh0IK8syiUMXifvrPQ (last accessed September 23, 2024).

[7] https://www.photonics.com/EDU/digital_camera/d3531 (last accessed September 23, 2024).

camera, not its own camera. The '949 Patent itself recognizes this. [Dkt. 139-1 at 11 ("High Resolution Digital still cameras employing matrix photodetector array chips to scan the image produced by the camera lens are now commonplace.").] Put simply, a lens alone cannot capture images, so it is not a camera, digital or otherwise. Moreover, the relevant limitation in claim 1 does not state that the sensor's field of view must be separate from the digital camera's. Rather, it says that the electro-optical sensor must have a field of view, and that the sensor itself must be "separate from" the digital camera. [Dkt. 139-1 at 18; Dkt. 153 at 9.]

GTP also contends testimony from both Dr. Myler and Motorola's expert, Dr. Creusere, creates a triable issue of fact. Not so. As to Dr. Creusere, GTP merely points to snippets of his deposition where he acknowledges the Sensor has a different field of view than the lens, and how the Sensor and lens function together. [Dkt. 148 at 14.] But as just discussed, this admission does not impact the analysis.

For Dr. Myler, GTP relies on the below except from his deposition:

> And now we get to, what do we mean by a "camera"? And basically, you have the [Sensor], and he's arguing that since <u>the [Sensor] is in a little contained box with a lens and it's called a camera module</u>, that that's the camera, and therefore, the sensor, which is the CCD array, is part of a camera and not separate as required by the claims. And the reality is that this is not the whole camera. <u>And so I don't agree that the digital camera and electro-optical sensor of the – I'm reading Paragraph 64: (Reading) That the digital camera and electro-optical sensor of the accused devices are not separate as required by Limitation 1A.</u>

[Dkt. 148 at 15 (emphases in original).] What is missing from this (confusing) quote, however, is any explanation of the basis for Dr. Myler's belief that the Sensor is separate from the digital camera. Additionally, even if the Sensor and lens are "not

9

the whole camera" it does not follow that the Sensor is "separate from" it; they are both component parts.

Tellingly, GTP does not cite to a single portion of Dr. Myler's expert report that explains how the Sensor is separate from the digital camera. And as Motorola notes, this is likely because Dr. Myler's report does not even mention the Sensor. [Dkt. 138 at 20-21.] Instead, his report summarily concludes that "For each Motorola Accused Instrumentality, one or more of the cameras and/or sensors that I identified in Section V.A operate as an electro-optical sensor separate from the digital camera." But the only sensors discussed in Section V.A (or elsewhere) are the ambient light and proximity sensors that Dr. Myler admitted could not detect gestures. [*Id.*] This is insufficient to survive summary judgment. *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1364 (Fed. Cir. 2010) ("an expert's naked conclusion is insufficient to survive summary judgment"); *USC IP P'ship, L.P. v. Meta Platforms, Inc.*, 2023 WL 5606977, at *3 (Fed. Cir. 2023) ("conclusory expert opinion[s] do[] not present a genuine factual dispute to prevent summary judgment.")

Based on this record, no reasonable jury could conclude the Accused Devices contain a sensor that is separate from the digital camera. Accordingly, Motorola cannot be found liable for infringement, and summary judgment is proper. The Court need not reach Motorola's alternative argument that the '949 Patent is invalid.

10

## IV. Conclusion

For these reasons, Motorola's motion for summary judgment is granted.

Enter: 22 CV 3535
Date: September 24, 2024

_____
Lindsay C. Jenkins
United States District Judge

11